**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Gyan Parkash SYAL, Defendant–Appellant.**

**No. 91–1871.**

United States Court of Appeals, Sixth Circuit.

Submitted April 9, 1992.

Decided May 11, 1992.

**902**

Patricia G. Blake (briefed), Blondell Morey, Asst. U.S. Atty., Detroit, Mich., for plaintiff-appellee.

Edmond Ralph Anderson, Jr. (briefed), Phoenix, Ariz., for defendant-appellant.

Before: MERRITT, Chief Judge; RYAN, Circuit Judge; and FORESTER, District Judge.[*]

MERRITT, Chief Judge.

Defendant Gyan Syal appealed from the District Court's denial of his motion to withdraw his guilty plea, made under Rule 32(d) of the Fed.R.Crim.P. Syal based his motion to withdraw his plea on the District Court's failure to comply with Rule 11 of the Fed.R.Crim.P. Rule 11 requires a court, before accepting a guilty plea, to "inform the defendant of, and determine that the defendant understands ... the nature of the charge to which the plea is offered ... and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term." Rule 11(c)(1).[1] In this case the District Court failed, during the plea colloquy, to explain the elements of the offense, required as part of being certain the defendant understands the charges against him. The Court also failed to tell the defendant that his sentence would include supervised release and the effect that such a term of supervised release could have on his sentence.

The question before this Court is whether the District Court's failure to comply with Rule 11 in accepting the guilty plea requires vacation of the guilty plea and remand either for a new plea or for trial. For the reasons set out below, we hold that the failure to comply with Rule 11 in the plea hearing requires vacation of the guilty plea. We therefore vacate Syal's plea and remand to the District Court for further proceedings consistent with this opinion.

\* \* \* \* \* \*

Syal, his brother-in-law, Narav Sachdeva, and a third person, Keith McAllister, were indicted on six counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of mail fraud, in violation of 18 U.S.C. § 1341. The indictment charged a conspiracy to defraud sellers of valuable merchandise by falsely representing that Sachdeva's company, Pushpa Investments, Inc., had large assets. According to the indictment Syal gave false financial information for his company, Pushpa Investments, Inc., to Dun & Bradstreet, providing as a reference his brother-in-law, Sachdeva, who was an officer at Coast Savings Bank. The

---

[*] The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

[1]. (c) Advice to the Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

  (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances, and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense;

indictment identified McAllister as the person who applied for credit and filled out orders for the merchandise. McAllister applied in the name of Pushpa, Inc., and gave Sachdeva's name as a credit reference. When called at Coast Savings Bank by those inquiring about Pushpa, Inc.'s financial condition, Sachdeva verified accounts for Pushpa, Inc., when in fact Pushpa, Inc., had no accounts at that bank. The indictment specified multiple uses of the telephone, telefacsimile transmissions, and mail to carry out these transactions.

Syal and Sachdeva went to trial. McAllister pled guilty and testified against Syal and Sachdeva. After three days of trial, when the Government had nearly completed its case, Syal and Sachdeva entered guilty pleas on three counts of wire fraud, in violation of 18 U.S.C. § 1343, instead of proceeding with the trial.[2] In exchange for their guilty pleas the Government agreed to drop all other counts in the indictment.

After entering his guilty plea but prior to sentencing, Syal moved, under Rule 32(d) of the Federal Rules of Criminal Procedure, to withdraw his plea on the grounds that he was not guilty and that the Court had not complied with Rule 11 in accepting the guilty plea. Syal asserted that the Court had not given "the required advisements" of Rule 11(c), although he did not object specifically to the Court's failure to explain the elements of the offense or the failure to tell him that the sentence would include supervised release. The plea colloquy is set out in a note below.[3] Before this

---

**2.** § 1343. Fraud by wire, radio, or television
Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

**3.** During the plea colloquy required under Rule 11, the District Court addressed the defendant:
*The Court:* Okay. Let's see. Mr. Syal, it's my understanding, Mr. Syal, that you are offering a plea of guilty at this time to Counts II, V, and VI?
*Defendant Syal:* Yes, sir.
*The Court:* And that's the same counts that Mr. Sachdeva just pled guilty to?
*Defendant Syal:* Yes, sir.
*The Court:* And it's also my understanding that the Government is going to dismiss all the other counts—
*Defendant Syal:* Yes, sir.
*The Court:* —upon sentencing? All right. And you understand the maximum sentence is five years in prison; the minimum sentence is whatever the guidelines provide?
*Defendant Syal:* Yes, sir.
*The Court:* Okay. And as I've indicated to Mr. Sachdeva, you've had a jury picked. You're in the—we're in the fourth day of trial. You understand this case could go on to completion, and you could let a jury determine it. But you choose to offer a plea of guilty?
*Defendant Syal:* Yes, sir.
*The Court:* All right. And no one has threatened you?
*Defendant Syal:* No, sir.

*The Court:* And the only promises made are the promises I've pointed out about the—all the other counts being dismissed?
*Defendant Syal:* Yes, sir.
*The Court:* Okay. And, [Ass't U.S. Attorney] Mr. Soisson, do you want to interrogate him also as to those counts?
*AUSA Soisson:* Yes; yes, your Honor, just briefly. Mr. Syal, did—during the course of these events, did you contact your brother-in-law, Mr. Sachdeva, and ask him to provide information about a Pushpa Investment account at Coast Savings?
*Defendant Syal:* Yes.
*AUSA Soisson:* And, in fact, Pushpa Investment did not have an account at Coast Savings; is that correct?
*Defendant Syal:* No that—at that particular time, no.
*AUSA Soisson:* Thank you. Your Honor, I think on the basis of the information this Court has heard during the course of this trial, I think there's sufficient factual basis for—to support these pleas.
*The Court:* I think I agree with you, Mr. Soisson. And, Mr. Anderson [Syal's attorney], now, is there anything you want to say about that, about the plea—I mean, the facts that have been recited by your client, is there any comment you want to make at all about that?
*Mr. Anderson:* No. I think my client is being forthright in that respect. My position here is that I am opposed to this plea for various reasons. It would take considerable time to explain them, but my client has taken the position, and I'm certainly going to support my client to that extent.
*The Court:* Okay. All right. Okay. Well, the court is satisfied and will accept the plea, and we'll set sentencing—
*Mr. Soisson:* Your Honor, would you also ask Mr. Syal if he does, in fact, plead guilty to the three counts, II, V, and VI?

Court Syal specifically objected to the failure of the District Court to explain the elements of his offense and to notify him that his sentence would include a period of supervised release.

At the sentencing hearing the District Court considered Syal's Rule 32 motion and denied it.[4] The Court then sentenced Syal to 18 months imprisonment and three years supervised release on each of three counts of wire fraud, all to run concurrently. This sentence resulted from a base offense level of 17 reduced by 2 for acceptance of responsibility with a Criminal History category of I. The Guideline range was 18 to 24 months with supervised release of 2 to 3 years.

\* \* \* \* \* \*

The Supreme Court has emphasized the value in a district court's adhering "meticulously" to Rule 11. *See McCarthy v. United States*, 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969). While recognizing that the Rule 11 procedure itself is not constitutionally mandated, the Court in *McCarthy* described its purposes: "[I]t is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary.... and to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination." 394 U.S. at 465, 89 S.Ct. at 1170. *McCarthy* set out a rule that "a defendant is entitled to plead anew if a United States district court accepts his guilty plea without fully adhering

to the procedure provided for in Rule 11." 394 U.S. at 463–64, 89 S.Ct. at 1169–70.

*McCarthy* has been modified by the inclusion in Rule 11 of a harmless error provision. *See* Rule 11(h). A technical failure to comply with Rule 11 does not now require vacation of a plea and opportunity for a new plea. *See United States v. Stead*, 746 F.2d 355, 356 (6th Cir.1984), *cert. denied*, 470 U.S. 1030, 105 S.Ct. 1403, 84 L.Ed.2d 790 (1985) (noting the addition of the harmless error standard to Rule 11 and holding that the change in the Rule modified the analysis of a Rule 11 question, so that "substantial compliance" rather than the "strict compliance" set out in *McCarthy* is now required). Nevertheless failure to comply with Rule 11 is harmless only if the variance from the procedures "does not affect substantial rights." Rule 11(h). If a District Court fails to comply with Rule 11 and that failure cannot be said to be harmless, a defendant is entitled to a remedy. *See United States v. Goldberg*, 862 F.2d 101 (6th Cir.1988) (noting that vacation of plea and remand for repleading is appropriate remedy in case where it is not clear that defendant understood charges or that there was factual basis for plea).

Rule 11(c)(1) expressly requires that the defendant be told the "nature of the charge." When a defendant pleads guilty, that defendant is admitting "all the elements of a formal criminal charge," *see McCarthy*, 394 U.S. at 466, 89 S.Ct. at 1171, and so must have knowledge of all those elements. In a simple case the dis-

---

*The Court:* Oh, yes. Okay. You're pleading guilty to—
*Defendant Syal:* Yes, sir, I'm—
*The Court:* Counts II, V, and VI?
*Defendant Syal:* Yes, sir.
*The Court:* Okay. All right. The court will accept the plea. We'll set sentencing also for June the 5th.

**4.** The district judge noted that "we had a jury, and we'd been in three days of trial," Jt.App. at 81, and that after Syal "sat here for three days ..., he certainly was well aware of everything that was going on. He knew what the charges were." Jt.App. at 82. He noted that Syal had an "experienced" trial lawyer and "great representation." *Id.* He pointed out that Syal had insisted on pleading guilty, against his lawyer's

advice. He also noted that Syal's lawyer had acknowledged that Syal was "being forthright" in his admission of guilt. Jt.App. at 81. The court further pointed out that Syal could not "come before this Court as a person who can say, well geez, I made a mistake, I didn't understand this, I didn't understand that. He's college educated. He's well traveled. He's exactly the kind of person that, that I would have no need or think that I would have any need to interrogate any, to any greater lengths than I did at the time of his plea, because I think he's a very intelligent person.... I think everything that took place falls within the parameters of the Sixth Circuit. So I'm going to deny the motion to withdraw the plea based on those facts." Jt.App. at 82.

trict court may need only to read the indictment and allow the defendant to ask questions about the charge. *See United States v. Van Buren,* 804 F.2d 888, 892 (6th Cir. 1986). When the case is more complex, further explanation may be required. In any case the district court must be satisfied, after discussion with the defendant in open court, that the defendant understands the elements of the offense. *See id.* at 891. *See also United States v. Edgecomb,* 910 F.2d 1309 (6th Cir.1990) (holding that Government's reading of the indictment into record at the plea hearing, accompanied by court's reciting the count of the indictment as well as court's asking defendants if they understood the charge against them and if they had discussed the charge with their attorneys, was sufficient procedure to establish defendants' understanding of charge against them in case where conspiracy to possess cocaine with intent to distribute was simple enough for lay person to understand).

■ In this case the District Court did not rehearse the content of the indictment or explain the separate elements of the wire fraud offense. The prosecutor asked directly whether Syal had committed certain acts in order to establish the factual basis for the plea, but there was no explanation of the legal significance of those acts. See *supra* note 3, setting out the plea colloquy. Although Syal had heard three days of testimony presented by the Government to establish the case against him, the Court had not summarized the law or instructed the jury as to the elements of the wire fraud offense. Thus the three days of testimony did not tell Syal the elements of the offense. The indictment specified certain acts the defendants were said to have committed but did not explain each element of the offense. It is therefore not clear that Syal understood each element of the formal criminal charge. The Court's failure to explain to Syal the elements of the wire fraud offense thus affected Syal's substantial rights.

■ The district judge assumed that because Syal had heard the Government's case for three days and because he had had a good lawyer and was well-educated, the Court did not need to interrogate the defendant at great length. *See* District Court's explanation for denial of Rule 32(d) motion, *supra* note 4. While a defendant in Syal's circumstance may not need as much explanation as an unrepresented defendant, the District Court must meet the minimum requirements of Rule 11. Some rehearsal of the elements of the offense is necessary for any defendant. *See United States v. Van Buren,* 804 F.2d 888 (6th Cir.1986). Failure to identify the elements of the offense is error and cannot be said to be harmless, even for an educated, well-represented defendant.

Rule 11(c)(1) also expressly requires that the District Court tell the defendant the "maximum penalty provided by law, including the effect of any ... supervised release." To plead knowingly, the defendant must know the "maximum possible penalty provided by law." Rule 11(c)(1). The Rule requires explanation of supervised release as part of a sentence because supervised release can result in greater incarceration time than a defendant's sentence originally sets out. *See* 18 U.S.C. § 3583(e)(3) (setting out circumstances under which, if defendant violates a condition of supervised release, the court may "revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release without credit for time previously served on postrelease supervision" but limiting additional prison time to no more than "3 years if the offense for which the person was convicted was a Class B felony").

■ We recognize that in some circumstances a court's failure to notify the defendant that a sentence will include supervised release may be harmless error. *See United States v. Williams,* 899 F.2d 1526 (6th Cir.1990) (holding that court's failure to tell defendant in Rule 11 plea hearing that he faced a mandatory period of supervised release was harmless error because defendant was on notice of the supervised release requirement set out in the plea agreement and defendant did not claim he was unaware of the requirement, only that

court technically had failed to comply with requirements of rule). *See also United States v. Bachynsky*, 934 F.2d 1349 (5th Cir. (*en banc*)), *cert. denied*, —— U.S. ——, 112 S.Ct. 402, 116 L.Ed.2d 351 (1991) (court held failure to inform defendant of supervised release was harmless error in case where defendant made no claim that he did not know he faced period of supervised release and where even worst case prospect of additional time in prison resulting from revocation of supervised release resulted in significantly less time in prison than maximum sentence allowed); *United States v. Carey*, 884 F.2d 547 (11th Cir. 1989), *cert. denied*, 494 U.S. 1067, 110 S.Ct. 1786, 108 L.Ed.2d 787 (1990) (failure to notify defendant, in Rule 11 colloquy, of supervised release constituted harmless error where supervised release was in presentence report which was reviewed by defendant). *United States v. Barry*, 895 F.2d 702 (10th Cir.) *cert. denied*, 496 U.S. 939, 110 S.Ct. 3222, 110 L.Ed.2d 669 (1990) (failure to advise defendant of supervised release considered harmless error in circumstances of case where court explained sentence would be determined by Sentencing Guidelines and determined that defendant's lawyer had talked with defendant about Guidelines and Court had told defendant of maximum 40 year sentence but sentenced him to six years imprisonment and five years supervised release); *United States v. Sanclemente–Bejarano*, 861 F.2d 206 (9th Cir.1988) (failure to tell defendant of supervised release held to be harmless error in circumstances of case where court spoke to defendant's lawyer of required supervised release during plea colloquy and where court had told defendant he faced life imprisonment but sentenced him to 15 years imprisonment and five years supervised release). *See also United States v. McGeehan*, 824 F.2d 677 (8th Cir.1987), *cert. denied, sub nom Jovanovic v. United States*, 484 U.S. 1061, 108 S.Ct. 1017, 98 L.Ed.2d 982 (1988) (confusion in warning defendant of maximum sentence, including failure to tell him he could have a life special parole term, held to be harmless error when defendant was sentenced to only three-years special parole term, and

had been told he faced a three year special parole term).

Although courts have sometimes found the failure to notify the defendant of supervised release to be harmless error, such a failure is error and is excused as harmless only where the defendant's substantial rights have not been affected. Substantial rights may not be affected when a defendant makes no claim that he did not know of the supervised release and therefore cannot claim that the lack of information affected his decision whether to enter a plea of guilty. *See e.g. United States v. Williams*, 899 F.2d 1526, 1531 (6th Cir. 1990); *United States v. Bachynsky*, 934 F.2d 1349 (5th Cir.1991). Substantial rights may not be affected when a defendant is informed of the maximum penalty and that penalty markedly exceeds the penalty the defendant received, including the period of supervised release and any additional incarceration time that might result from violation of supervised release condition. *See, e.g., United States v. Bachynsky*, 934 F.2d at 1359–60; *United States v. Barry*, 895 F.2d 702, 704 (10th Cir.1990).

In the case before us, however, the failure to notify the defendant of the term of supervised release and its possible effect on his sentence was not harmless error. The addition of supervised release, of which there was no discussion until after the plea hearing, can affect Syal's substantial rights. Under his current sentence, if Syal violates any of the conditions of his supervised release term, the court can require Syal to spend the statutorily allowed portion of his supervised release time in prison in addition to the 18 month sentence in prison. The Court would not have to reduce the additional imprisonment term by the time already spent on supervised release. Nothing in the record suggests that Syal understood that his sentence would include supervised release. There was no written plea agreement by which he might have been warned. The record describes only a brief negotiation between the Government and the two defendants and their lawyers. Moreover, the five year maximum sentence the District Court

warned Syal of is not markedly greater than the sentence he received when the effects of supervised release are accounted for.

Syal raised two other claims on appeal. He asserted that the District Court had not determined the accuracy of the plea as required by Rule 11(f), claiming that his answers to questions asked during the plea colloquy did not provide a factual basis to support a guilty plea to Counts II, V, and VI of his indictment. We find no merit in this claim. The district judge could rely on the testimony during the Government's case against Syal to establish the factual basis of the plea when that testimony was combined with Syal's answers to the Government's questions whether Syal had committed certain acts. *See* Plea Colloquy, set out in note 3 *supra.* Syal also claims that he cannot be sentenced separately for each use of the wires under the wire fraud statute, 18 U.C.S. § 1343, and that he therefore can be sentenced on only one count of wire fraud. This claim is without merit. *See United States v. Stull,* 743 F.2d 439 (6th Cir.1984), *cert. denied,* 470 U.S. 1062, 105 S.Ct. 1779, 84 L.Ed.2d 838 (1985) (application of rule allowing separate sentence for each use of mails in mail fraud case); *United States v. Fermin Castillo,* 829 F.2d 1194 (1st Cir. 1987) (application of same rule to wire fraud), cited with approval in *United States v. Busacca,* 936 F.2d 232, 239 (6th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 595, 116 L.Ed.2d 619 (1991). *See also Hofstetter v. Fletcher,* 905 F.2d 897, 902 (6th Cir.1988) (noting that Sixth Circuit treats 18 U.S.C. § 1341 and 18 U.S.C. § 1343 in parallel fashion). Syal is entitled to no relief on these claims.

On Syal's other claims, however, he is entitled to relief. The District Court erred in failing to determine that the defendant understood the charge against him and in failing to notify the defendant that his sentence would include a period of supervised release, both required by Rule 11. This lack of compliance with Rule 11 was not harmless error. We therefore vacate Syal's plea and remand to the District Court for further proceedings consistent with this opinion.