14 F.3d 601
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Marvin LOVEJOY, Petitioner-Appellant,
v.
The UNITED STATES of America, Respondent-Appellee.
 No. 93-3112.
 United States Court of Appeals, Sixth Circuit.
 Dec. 8, 1993.
 
 Before: NELSON and BATCHELDER, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Respondent-appellant, Marvin Lovejoy, appeals a judgment denying his motion to vacate his sentence filed under 28 U.S.C. Sec. 2255 because his guilty plea was allegedly involuntary. For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 Between December 20, 1989, and January 25, 1990, the defendant Lovejoy, his fourteen-year-old son Mario Butler, and Freddy Brown engaged in a series of bank robberies in northwestern Ohio. Defendant participated in seven of the robberies and each time was armed with a loaded firearm. On January 25, 1990, the three men, two of them armed, entered the Society Bank in Toledo, Ohio and took approximately $18,000.00 from the tellers. A witness observed the suspects fleeing the bank and reported their description and a description of their vehicle to the Toledo Police Department. A Toledo police crew observed the vehicle and after a high speed chase, the robbers lost control of the vehicle, crashed into a drainage ditch, and fled the vehicle. Defendant was shot by the apprehending officers when he turned to face them with a loaded firearm pointed in their direction.
 
 
 3
 After all three suspects were apprehended, the police seized the loaded firearms as well as the $18,000.00 taken during the robbery. On the same day as the arrest, co-defendant Butler confessed his involvement in the various bank robberies and implicated the other two defendants. Co-defendant Brown also made statements indicating his involvement with the robbery. On the day of his arrest, defendant Lovejoy was taken to St. Vincent's Hospital for treatment.
 
 
 4
 On January 26, 1990, special agents William J. Carollo and Donald W. Bottles of the Federal Bureau of Investigation contacted defendant at St. Vincent's Hospital, advised him of their identities, and the purpose of their visit. Before beginning the interview, special agent Bottles asked defendant how he was feeling. Defendant responded, "I'm sore." Special agent Bottles then inquired whether defendant was on any medication that would affect his judgment or hinder his giving a statement, to which defendant responded, "No," that he was only in a "little pain." Next defendant was furnished with an "Interrogation and Rights" form which he read and signed, stating that he fully understood his rights as contained on the form including the waiver of rights section. After signing the "Interrogation and Rights" form, defendant made a statement to the agents fully admitting his involvement in the bank robberies.
 
 
 5
 On February 20, 1990, defendant was indicted by a grand jury for the Northern District of Ohio for seven violations of 18 U.S.C. Sec. 2113(a) and (d), armed bank robbery, and 18 U.S.C. Sec. 2, and a firearms violation in violation of 18 U.S.C. Sec. 924(c). After receiving court-appointed counsel, defendant entered a guilty plea to all counts of the indictment on March 27, 1990.
 
 
 6
 On June 12, 1990, defendant was sentenced to a term of incarceration of 135 months on counts one through seven, to run concurrently, and 60 months on the firearm count which was to run consecutively. The district court also imposed a supervised release of 60 months on each of counts one through seven, to run concurrently, and supervised release of 36 months on count eight, which was also to run concurrently.
 
 
 7
 Defendant filed an appeal as of right in this matter. On June 5, 1991, the Sixth Circuit entered an order voluntarily dismissing the appeal.
 
 
 8
 On February 25, 1992, defendant filed a motion to vacate sentence pursuant to 28 U.S.C. Sec. 2255. The court, in an opinion and order filed January 20, 1993, denied the relief requested in the petition. On January 28, 1993, defendant filed a timely notice of appeal.
 
 II.
 
 9
 Defendant first contends that the indictment did not charge defendant with seven counts of armed robbery and one count of firearm use, to which he pled guilty, and therefore the indictment did not properly inform him of the charges against him. Defendant argues that he entered pleas of guilty "to five additional counts of armed bank robbery that he was never charged with in the indictment." Apparently defendant is contending that in counts 1, 2, 4, 6 and 7 of the indictment, he was charged only with a violation of 18 U.S.C. Sec. 2, aiding and abetting armed bank robbery. Because defendant failed to raise this issue before the district court, he is precluded from raising it on appeal. White v. Anchor Motor Freight, Inc., 899 F.2d 555, 559 (6th Cir.1990). Moreover, contrary to defendant's assertion, he was charged with violating both 18 U.S.C. Sec. 2113(a) and (d), armed bank robbery, and 18 U.S.C. Sec. 2 for aiding and abetting armed bank robbery in counts 1, 2, 4, 6, and 7 of the indictment, and thus was given notice of the charges against him.[1] The district court is affirmed on this issue.
 
 III.
 
 10
 Defendant next argues that at the plea hearing the district court failed to tell him the nature of the charges against him, the maximum penalty he would receive, or about his term of supervised release, and thus failed to comply with Fed.R.Crim.P., Rule 11(c)(1). Defendant relies on United States v. Syal, 963 F.2d 900, 905 (6th Cir.1992) for the proposition that some rehearsal of the elements of the offense is necessary for any defendant and failure to identify the elements of the offense cannot be said to be harmless.
 
 
 11
 First, defendant failed to raise the issue of whether he understood the nature of the charges against him before the district court and therefore is precluded from raising this issue on appeal. White v. Anchor Motor Freight, Inc., 899 F.2d at 559. Even if this court were to consider defendant's arguments in this regard, they have no merit.
 
 
 12
 According to this court in United States v. Ferguson, 918 F.2d 627, 630 (6th Cir.1990), to prevail in setting aside a guilty plea under section 2255, a defendant must show a " 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." With regard to Rule 11, the Supreme Court has stated that a "technical" violation of the rule does not warrant section 2255 relief. United States v. Timmreck, 441 U.S. 780, 784 (1979).
 
 
 13
 We find that defendant's guilty plea was valid under constitutional standards. After initial statements by defendant indicating that he was confused about the nature of the charges against him and the maximum sentence, the district court twice had defendant confer with his attorney to clear up the misunderstandings. The judge then asked defendant if he understood the charges, and defendant responded that he did. A representation on the record that defense counsel has explained the charge is sufficient to show that the defendant had notice of the nature of the charge against him. Marshall v. Lonberger, 459 U.S. 422, 436 (1983). In United States v. Syal, the case on which defendant relies, the court made no effort to ascertain whether the defendant understood the nature of the charge against him or if he had discussed the nature of the charge with an attorney. Moreover, in the record before this court, defendant does not state that he was actually unaware of the nature of the charges against him or that his plea was not voluntary; therefore, there was not a fundamental denial of due process. See United States v. McGlocklin, No. 91-6121, slip op. (6th Cir. Sept. 17, 1993) (en banc). In the present case, the judge also asked defendant if he knew the maximum penalty he exposed himself to by entering a plea of guilty. Defendant replied, "Yes, up to 180 years." We find that these exchanges are sufficient to conclude that defendant was aware of the nature of the charges against him and the potential penalties he faced.
 
 
 14
 Likewise defendant's argument that the district court failed to inform him of a term of supervised release as required by Rule 11(c)(1) has no merit. This court in Syal stated in this regard that "[s]ubstantial rights may not be affected when a defendant is informed of the maximum penalty and that penalty markedly exceeds the penalty the defendant received, including the period of supervised release and any additional incarceration time that might result from violation of the supervised release condition." 963 F.2d at 906. In the present case, defendant was advised that the maximum prison term was 180 years. He received about 16 years plus an additional 5 year term of supervised release. Clearly, the penalty defendant actually received, including the term of supervised release, was "markedly exceeded" by the maximum term that defendant was informed that he could receive upon entry of his plea. For this reason, defendant has failed to show "a fundamental defect which inherently results in a complete miscarriage of justice," or, an error so egregious that it amounts to a violation of due process.[2] Hill v. United States, 368 U.S. 424, 428 (1962). To conclude, looking at the record of the plea proceedings as a whole, we find that the judge's technical violations of Rule 11 did not prevent defendant from making a voluntary and intelligent plea. The district court is affirmed on this issue.
 
 IV.
 
 15
 Finally, defendant contends that his trial counsel was ineffective because he failed to investigate the possible suppression of defendant's hospital confession to FBI Special Agent Bottles and Carollo on the basis that he was too medicated to make a voluntary confession.
 
 
 16
 The standard for judging ineffective assistance of counsel is whether counsel's conduct so undermined the proper functioning of the adversarial process it cannot be relied upon as having produced a just result. Strickland v. Washington, 466 U.S. 668, 686 (1984). Defendant must prove first that trial counsel's performance was deficient. Second, he must show that the deficient performance prejudiced his defense.
 
 
 17
 The affidavit of John T. Callahan, defendant's trial counsel, indicates that his performance was not deficient. He discussed with defendant the possibility of suppressing his confession as follows:
 
 
 18
 On January 28, 1990, I talked with Mr. Lovejoy at St. Vincent Medical Center and I advised him that I had been appointed as his counsel. He appeared eager to talk with me and we talked for about one-half hour. He seemed to be clear-minded, able to remember the events of January 25, 1990, his conduct in the robberies, and his later interrogation by the agents of the Federal Bureau of Investigation. At all times throughout this interview, he appeared to me to be lucid and competent in all respects. At no time did he appear to be under the influence of drugs or medication.
 
 
 19
 Callahan also stated that he subsequently spoke with Special Agent Donald Bottles of the Federal Bureau of Investigation concerning his interview with Mr. Lovejoy on January 26, 1990 and that after his conversation with him and in light of his conversation with Mr. Lovejoy, he had no doubt that Mr. Lovejoy knew what he was doing when he signed the waiver of rights and gave his statement to Special Agent Bottles.
 
 
 20
 Mr. Callahan stated he had discussed the possibility of a Motion to Suppress with defendant and had told him that the likelihood of setting aside his waiver of rights and his statement to the agents was virtually non-existent. Callahan stated that defendant appeared to agree with his assessment that defendant was not under the influence of medication when he signed the waiver and made his statement.
 
 
 21
 This determination of defendant's mental state at the time he gave his confession is corroborated by the statements set forth in the affidavit of Special Agent Bottles, who stated that he asked defendant if he was on any medication that would affect his judgment and that defendant responded "No," that he was only in "a little pain."
 
 
 22
 For these reasons, defendant's argument that his counsel's performance was deficient because he failed to suppress defendant's confession has no merit.
 
 V.
 
 23
 To conclude, for the reasons stated above, the opinion of the district court is hereby AFFIRMED.
 
 
 
 [1]
 Contrary to defendant's allegation that armed bank robbery requires different proof than aiding and abetting armed bank robbery, the elements for each offense are identical except that for aiding and abetting, the perpetrator need not himself commit each act which supports each individual element of the offense
 
 
 [2]
 Defendant also contends that he was advised by his counsel that he would receive a sentence of no more than 121 months. Even if this court were to accept this allegation as true, misadvice of an attorney about the length of the sentence is not a "fair and just" reason to allow the withdrawal of a guilty plea. United States v. Stephens, 906 F.2d 251 (6th Cir.1990). Moreover, defendant never at any point in the proceedings asked to withdraw his guilty plea